**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

GLOBAL ONE BUILDERS LLC,

Plaintiff, Case No.: 3:26-CV-1055

v.

NEXT CHAPTER HOMES, LLC
D/B/A NCH CONSTRUCTION,

Defendants.

---

## COMPLAINT

---

Plaintiff GLOBAL ONE BUILDERS LLC ("Global One" or "Plaintiff"), by and through its undersigned counsel, brings this action against Defendant NCH CONSTRUCTION ("NCH" or "Defendant"), arising from NCH's failure to pay for construction labor and services furnished by Global One on multiple construction projects in Indiana and Wisconsin, and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Global One Builders LLC ("Global One"), is an Indiana limited liability company organized under the laws of the State of Indiana.

2. Global One provides construction labor and related services, including finishing and painting services.

3. Defendant Next Chapter Homes, LLC, d/b/a NCH Construction ("NCH"), is an Ohio limited liability company registered to conduct business in the State of Wisconsin under the fictitious name NCH Construction.

4. NCH maintains its Wisconsin principal office at 2109 Eagle Drive, Middleton, Wisconsin 53562, within the Western District of Wisconsin.

5. NCH's registered agent, Geoffrey Hartnell, is located at the same address.

6. NCH is engaged in the construction business and, at all times relevant to this action, conducted construction operations in Wisconsin and Indiana, including the projects that are the subject of this action.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Plaintiff Global One Builders LLC is a citizen of Indiana and Defendant Next Chapter Homes, LLC is an Ohio limited liability company with its principal place of business in Wisconsin. Accordingly, complete diversity exists between Plaintiff and Defendant.

9. The amount in controversy exceeds $75,000.00 because Global One seeks to recover at least $138,396.50 in unpaid amounts for labor and construction services furnished to NCH, exclusive of interest, costs, and other recoverable damages.

10. This Court has personal jurisdiction over NCH because NCH is registered to conduct business in Wisconsin, maintains its Wisconsin principal office and registered office at 2109 Eagle Drive, Middleton, Wisconsin 53562, and conducts substantial construction business within the State of Wisconsin, including construction activities giving rise to the claims asserted in this action.

11. Venue is proper in the Western District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)(1), (c)(2), and (d) because NCH maintains its Wisconsin principal office and registered office in Middleton, Wisconsin, within this District, and is subject to personal jurisdiction in this District with respect to this action. Further, the majority of the performance under the parties' agreements was conducted in Wisconsin.

## FACTUAL ALLEGATIONS

### A. Preliminary Facts and the Parties' Course of Dealing

12. In or around March 2026, NCH sought construction labor for projects on which NCH was performing construction work in Indiana and Wisconsin.

13. The parties' relationship initially arose in connection with the Hunter Woods project in Indiana, where Rolando Jose Zeledon Baca ("Zeledon"), who later became a member and representative of Global One, agreed to provide finishing labor for NCH.

14. At the outset of the parties' relationship, and while Global One was in the process of being formed, Scalda Investments LLC ("Scalda"), an entity affiliated through common ownership with Global One, was temporarily used in connection with the initial payment for the work.

15. Global One was thereafter formed in Indiana to continue providing construction labor and services, and NCH continued requesting, directing, and accepting labor furnished through Global One.

16. The parties' relationship expanded beyond Hunter Woods as NCH requested that Global One furnish workers for additional NCH projects in Indiana and Wisconsin, including University Housing Solutions ("UHS"), NOVA Apartments ("NOVA"), and Inspire Prairie Springs ("IPS") (collectively, the "Projects").

17. Global One furnished finishing, painting, and related construction labor on the Projects at NCH's request.

18. The Projects overlapped in time, requiring Global One to mobilize and maintain workers at multiple NCH project sites simultaneously.

19. Global One paid its workers on a weekly basis and advanced the payroll necessary to furnish labor for NCH's Projects while awaiting payment from NCH.

20. NCH designated its superintendent, Julio Romero ("Romero"), to serve as its field point of contact in connection with Global One's workforce. Romero coordinated with Global One concerning the work being performed and validated labor hours used in preparing Global One's invoices.

21. Global One maintained and submitted records reflecting, among other things, the projects on which labor was furnished, the work performed, the hours worked, the applicable hourly rates, and the resulting charges.

22. Global One invoiced NCH directly for labor furnished across the Projects.

23. NCH knew that Global One's workers were being mobilized among its Projects. Among other things, NCH arranged and paid for lodging for members of Global One's workforce while those workers were deployed to NCH's project sites.

24. NCH made an initial payment of $20,566.00 to Scalda in connection with labor furnished during the initial period of the parties' relationship while Global One was being formed.

25. Thereafter, NCH dealt directly with Global One and made a subsequent partial payment of $7,746.00 to Global One toward amounts invoiced for the Projects.

26. NCH continued requesting and accepting labor furnished through Global One after Global One's formation and after making those payments, resulting in additional invoices and increasing unpaid balances.

27. As those balances accumulated, Global One repeatedly requested payment from NCH.

28. NCH's contemporaneous communications did not initially attribute its nonpayment to a contention that Global One had performed unauthorized work. Instead, NCH repeatedly represented that payment was delayed because NCH was itself awaiting payment from parties upstream on the Projects.

29. For example, on April 22, 2026, when Global One requested payment, NCH's Geoffrey Hartnell ("Hartnell") advised that NCH lacked sufficient funds to complete the payment at that time but expected the funds shortly thereafter.

30. In May 2026, Hartnell again explained that NCH was awaiting substantial overdue payments from parties upstream on its projects and represented that NCH would make payments to Global One as funds became available.

31. NCH continued making similar representations later that month.

32. When Global One again requested payment, Hartnell stated that NCH had not yet received payment for Global One's work and that NCH did not have funds available to advance the outstanding amounts.

33. On May 28, 2026, Hartnell again advised Global One that NCH could not pay funds it had not yet received and explained that payment for work performed in April was expected in June and payment for work performed in May was expected in July.

34. Throughout this period, Global One continued advancing weekly payroll and furnishing the labor requested by NCH.

35. Ultimately, NCH failed to pay Global One in full for the labor and services furnished on the Projects.

**B. Hunter Woods Project**

36. The parties' construction relationship began with the Hunter Woods project in Indiana.

37. On or about March 31, 2026, Zeledon, acting as the contractor at the outset of the relationship, entered into an agreement with NCH to furnish finishing labor for the Hunter Woods project.

38. The agreement contemplated that Zeledon would furnish authorized workers to perform finishing work for NCH and that NCH would compensate the labor on an hourly basis.

39. Shortly thereafter, Global One was formed in Indiana to continue the construction operations. During that transition, Scalda, an affiliated entity under common ownership, was used in connection with the initial payment for work performed.

40. NCH made the initial $20,566.00 payment to Scalda while Global One was being formed.

41. Following Global One's formation, NCH continued requesting and accepting construction labor through Global One, and Global One's personnel continued performing work on Hunter Woods.

42. NCH thereafter dealt directly with Global One concerning the continuing work, received invoices issued by Global One, and made payments directly to Global One during the parties' continuing course of dealing.

43. Global One invoiced NCH for the Hunter Woods labor furnished through its personnel. For example, Invoice No. G1B-20260002, issued directly to NCH on April 25, 2026, billed $2,166.00 for 57 hours of Hunter Woods finishing labor at $38.00 per hour and directed payment to Global One Builders LLC.

44. NCH's contemporaneous communications further acknowledged the continuing Hunter Woods work and contemplated payment for it. On May 1, 2026, Hartnell advised Global One that Romero had spoken with Zeledon and that NCH would be paying the Hunter Woods weekly amounts.

45. NCH continued to accept the benefit of the Hunter Woods labor, but failed to pay all amounts due for that work.

46. After accounting for payments and credits, the unpaid principal balance attributable to the Hunter Woods project is $10,865.00.

**C. University Housing Solutions Project**

47. As the parties' relationship expanded, NCH requested that Global One furnish labor for the University Housing Solutions ("UHS") project in Indiana.

48. Global One furnished finishing, painting, and related labor for UHS at NCH's request and invoiced NCH for that work.

49. By way of example, Invoice No. G1B-20260002 billed NCH for 172 hours of UHS painting at $35.00 per hour and 81 hours of UHS finishing at $38.00 per hour, for charges totaling $9,098.00 on that invoice alone.

50. Global One continued furnishing labor and incurring weekly payroll expenses for the UHS project while awaiting payment from NCH.

51. NCH's communications concerning payment continued to reference funds it expected to receive from parties upstream on the project.

52. On May 25, 2026, Hartnell advised Global One that NCH was owed an invoice from Elford concerning UHS and indicated that NCH expected to use those funds toward payment.

53. Despite Global One having furnished the requested labor, NCH failed to pay all amounts due for the UHS project.

54. After accounting for payments and credits, the unpaid principal balance attributable to UHS is $28,604.00.

**D. NOVA Apartments Project**

55. NCH requested that Global One furnish painting and related labor for the NOVA Apartments project in Wisconsin.

56. Global One mobilized workers to NOVA, performed the requested labor, and invoiced NCH for the work.

57. Global One continued furnishing NOVA labor during April and May 2026 as part of the parties' ongoing course of dealing.

58. NCH failed to pay Global One in full for the NOVA labor, leaving an unpaid principal balance of $49,595.00.

59. Global One subsequently contacted Stevens Construction, an upstream contractor associated with NOVA, in an effort to obtain payment for its labor without resorting to litigation.

60. On August 14, 2026, Stevens Construction advised Global One that it intended to address the $49,595.00 unpaid balance by issuing a joint check payable to NCH and Global One, that NCH was expected to endorse the check, and that the funds would thereafter be sent to Global One.

61. The contemplated payment was not made. On August 25, 2026, Stevens Construction advised Global One that NCH had requested an additional week before Stevens issued the joint check while NCH and its legal counsel worked through the dispute.

62. Global One remains unpaid $49,595.00 for the NOVA project.

**E. Inspire Prairie Springs Project**

63. NCH further requested that Global One furnish painting and related construction labor for the Inspire Prairie Springs ("IPS") project in Wisconsin.

64. Global One mobilized workers to IPS, performed the requested work, and invoiced NCH for the labor furnished.

65. IPS was being performed during the same general period as the other Projects, and Global One continued advancing weekly payroll expenses to maintain workers on NCH's projects while awaiting NCH's payments.

66. NCH made certain partial payments during the parties' course of dealing, including a $7,746.00 payment to Global One that the parties' contemporaneous communications identified as relating, at least in part, to IPS.

67. NCH nevertheless failed to pay the remaining amounts due for labor furnished on the IPS project.

68. After accounting for payments and credits, the unpaid principal balance attributable to IPS is $49,332.50.

**F. NCH's Direct Retention of Global One's Workers**

69. Global One recruited, mobilized, coordinated, and paid the workers it furnished to NCH for the Projects.

70. Global One also incurred expenses associated with maintaining its workforce for NCH's Projects, including advancing weekly payroll while awaiting payment from NCH.

71. After substantial balances for Global One's labor had accrued and remained unpaid, Global One withdrew personnel from NCH's Projects.

72. Thereafter, NCH directly hired and/or retained members of Global One's workforce to continue performing construction work on projects for which Global One remained unpaid.

73. Global One contemporaneously objected to NCH's direct retention of its personnel and raised the issue with NCH.

74. Thus, after requesting and accepting labor furnished through Global One and while substantial amounts remained unpaid for that labor, NCH directly engaged members of the same workforce that Global One had recruited, mobilized, coordinated, and paid.

**G. Global One's Collection Efforts and Final Pre-Suit Demand**

75. By the conclusion of the work, NCH owed Global One a total principal balance of $138,396.50, consisting of:

a. Hunter Woods: $10,865.00;

b. UHS: $28,604.00;

c. NOVA: $49,595.00; and

d. IPS: $49,332.50.

76. For months, Global One repeatedly sought payment from NCH through telephone calls, text messages, emails, invoices, and written demands.

77. Global One also attempted to resolve the outstanding balances without litigation by communicating with parties upstream from NCH concerning payment for Global One's labor.

78. Notwithstanding those efforts, NCH failed to pay the outstanding balance.

79. On June 8, 2026, Global One issued a written demand to NCH concerning the then-outstanding amounts.

80. Global One thereafter continued attempting to resolve the dispute without litigation and provided NCH additional time to address the outstanding balances.

81. On October 8, 2026, through undersigned counsel, Global One served NCH and its counsel with a Final Pre-Suit Demand seeking payment of the outstanding principal balance of $138,396.50.

82. The Final Pre-Suit Demand provided NCH ten (10) calendar days from receipt to either pay the $138,396.50 outstanding principal balance or execute a written payment agreement acceptable to Global One.

83. The ten-day deadline expired without NCH paying the outstanding balance or entering into an acceptable written payment agreement.

84. NCH presently owes Global One $138,396.50 in unpaid principal, exclusive of prejudgment interest and any other relief recoverable under applicable law.

85. All conditions precedent to bringing this action have occurred, have been performed, or have otherwise been waived.

86. Plaintiff retained the undersigned counsel to represent them in this matter and have and will incur reasonable attorneys' fees and costs.

## COUNT I
## BREACH OF CONTRACT – HUNTER WOODS PROJECT

87. Plaintiff realleges and incorporates by reference paragraphs 1 through 86 as though fully set forth herein.

88. NCH requested and accepted finishing labor for the Hunter Woods project in Indiana.

89. The parties' relationship concerning Hunter Woods initially arose from the March 31, 2026 agreement between NCH and Rolando, pursuant to which finishing labor would be furnished to NCH on an hourly basis.

90. While Global One was being formed, Scalda was temporarily utilized in connection with the parties' initial course of dealing, including receipt of NCH's initial payment.

91. Following Global One's formation, NCH knowingly continued the parties' relationship through Global One by requesting and accepting labor furnished by Global One's personnel, communicating with Global One concerning the work and payment, receiving invoices issued directly by Global One, and making payment directly to Global One.

92. Through the parties' words, conduct, performance, and continuing course of dealing, NCH and Global One mutually assented to an agreement pursuant to which Global One would furnish labor for Hunter Woods and NCH would compensate Global One for the labor furnished.

93. Global One performed its obligations by furnishing the requested labor and services for Hunter Woods.

94. NCH accepted and received the benefit of Global One's performance.

95. NCH breached the parties' agreement by failing and refusing to pay Global One all amounts due for the labor and services furnished on Hunter Woods.

96. After application of all payments and credits, $10,865.00 remains due and owing for the Hunter Woods project.

97. As a direct and proximate result of NCH's breach, Global One has suffered damages in the amount of $10,865.00, together with prejudgment interest and such other relief as may be recoverable under applicable law.

WHEREFORE, Plaintiff GLOBAL ONE BUILDERS LLC, demands judgment against Defendant on Count I for damages in the amount of $10,865.00, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT II**
**BREACH OF CONTRACT – UNIVERSITY HOUSING SOLUTIONS PROJECT**

98. Plaintiff re-alleges and incorporates Paragraphs 1 through 86 as if fully set forth herein.

99. NCH requested that Global One furnish construction labor for the University Housing Solutions ("UHS") project in Indiana.

100. Global One agreed to furnish the requested labor, and NCH agreed to compensate Global One for the labor and services furnished.

101. The existence and terms of the parties' agreement are further demonstrated by their words, conduct, performance, invoices, communications, partial payments, and continuing course of dealing.

102. Pursuant to the parties' agreement, Global One mobilized workers to UHS and furnished finishing, painting, and related construction labor requested by NCH.

103. Global One submitted invoices to NCH reflecting the labor furnished and the corresponding amounts due.

104. NCH knew of, directed and/or coordinated, accepted, and received the benefit of Global One's labor at UHS.

105. Global One performed its obligations under the parties' agreement.

106. NCH breached the parties' agreement by failing and refusing to pay Global One all amounts due for the labor and services furnished at UHS.

107. After application of all payments and credits, $28,604.00 remains due and owing for the UHS project.

108. As a direct and proximate result of NCH's breach, Global One has suffered damages in the amount of $28,604.00, together with prejudgment interest and such other relief as may be recoverable under applicable law.

WHEREFORE, Plaintiff, GLOBAL ONE BUILDERS LLC, demands judgment against Defendant on Count II for damages in the amount of $28,604.00, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT – NOVA APARTMENTS PROJECT

109. Plaintiff re-alleges and incorporates Paragraphs 1 through 86 as if fully set forth herein.

110. NCH requested that Global One furnish construction labor for the NOVA Apartments ("NOVA") project in Wisconsin.

111. Global One agreed to furnish the requested labor, and NCH agreed to compensate Global One for the labor and services furnished.

112. The existence and terms of the parties' agreement are further demonstrated by their words, conduct, performance, invoices, communications, partial payments, and continuing course of dealing.

113. Pursuant to the parties' agreement, Global One mobilized workers to NOVA and furnished painting and related construction labor requested by NCH.

114. Global One submitted invoices to NCH reflecting the labor furnished and corresponding amounts due.

115. NCH knew of, directed and/or coordinated, accepted, and received the benefit of Global One's labor at NOVA.

116. Global One performed its obligations under the parties' agreement.

117. NCH breached the parties' agreement by failing and refusing to pay Global One all amounts due for the labor and services furnished at NOVA.

118. After application of all payments and credits, $49,595.00 remains due and owing for the NOVA project.

119. As further evidence that payment remained outstanding for Global One's work, Stevens Construction advised Global One that it intended to issue a $49,595.00 joint check to NCH and Global One in connection with the NOVA balance.

120. That payment was not completed, and Global One remains unpaid for the NOVA labor.

121. As a direct and proximate result of NCH's breach, Global One has suffered damages in the amount of $49,595.00, together with prejudgment interest and such other relief as may be recoverable under applicable law.

WHEREFORE, Plaintiff, GLOBAL ONE BUILDERS LLC, demands judgment against Defendant on Count III for damages in the amount of $49,595.00, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT – INSPIRE PRAIRIE SPRINGS PROJECT**

122. Plaintiff re-alleges and incorporates Paragraphs 1 through 86 as if fully set forth herein.

123. NCH requested that Global One furnish construction labor for the Inspire Prairie Springs ("IPS") project in Wisconsin.

124. Global One agreed to furnish the requested labor, and NCH agreed to compensate Global One for the labor and services furnished.

125. The existence and terms of the parties' agreement are further demonstrated by their words, conduct, performance, invoices, communications, partial payments, and continuing course of dealing.

126. Pursuant to the parties' agreement, Global One mobilized workers to IPS and furnished painting and related construction labor requested by NCH.

127. Global One submitted invoices to NCH reflecting the labor furnished and corresponding amounts due.

128. NCH knew of, directed and/or coordinated, accepted, and received the benefit of Global One's labor at IPS.

129. NCH made partial payment during the parties' course of dealing but failed to pay Global One in full.

130. Global One performed its obligations under the parties' agreement.

131. NCH breached the parties' agreement by failing and refusing to pay Global One all amounts due for the labor and services furnished at IPS.

132. After application of all payments and credits, $49,332.50 remains due and owing for the IPS project.

133. As a direct and proximate result of NCH's breach, Global One has suffered damages in the amount of $49,332.50, together with prejudgment interest and such other relief as may be recoverable under applicable law.

WHEREFORE, Plaintiff, GLOBAL ONE BUILDERS LLC, demands judgment against Defendant on Count IV for damages in the amount of $49,332.50, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT V**
**QUANTUM MERUIT**
**(PLEADED IN THE ALTERNATIVE)**

134. Plaintiff re-alleges and incorporates Paragraphs 1 through 86 as if fully set forth herein.

135. This Count is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d) to the extent NCH disputes the existence or enforceability of a contract governing any portion of Global One's work.

136. At NCH's express and/or implied request, Global One furnished substantial construction labor and services for the benefit of NCH on the Hunter Woods, UHS, NOVA, and IPS projects.

137. Global One furnished those services with the reasonable expectation that it would be compensated by NCH.

138. NCH knew that Global One expected to be paid for the labor and services it furnished.

139. NCH knew of, coordinated, accepted, and benefited from Global One's performance.

140. NCH further made partial payments during the parties' course of dealing while continuing to request and accept additional labor from Global One.

141. The reasonable value of the uncompensated labor and services furnished by Global One is at least $138,396.50.

142. Despite demand, NCH has failed and refused to compensate Global One for the reasonable value of the remaining labor and services furnished.

143. Accordingly, to the extent no enforceable contract governs any portion of the labor furnished, Global One is entitled to recover the reasonable value of its uncompensated services under the doctrine of quantum meruit.

WHEREFORE, Plaintiff, GLOBAL ONE BUILDERS LLC, demands judgment against Defendant on Count V for the reasonable value of the uncompensated labor and services furnished, in an amount to be determined at trial but presently calculated at $138,396.50, together with prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**UNJUST ENRICHMENT**
**(PLEADED IN THE ALTERNATIVE)**

144. Plaintiff re-alleges and incorporates Paragraphs 1 through 86 as if fully set forth herein.

145. This Count is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d) to the extent NCH disputes the existence or enforceability of a contract governing any portion of Global One's work.

146. Global One conferred substantial benefits upon NCH by furnishing construction labor and services for NCH's projects.

147. NCH knew of and appreciated those benefits, including because NCH requested the labor, coordinated Global One's workforce, accepted the resulting work, received Global One's invoices, made partial payments, and continued requesting additional labor.

148. NCH retained the benefit of Global One's labor and services.

149. NCH has failed to pay Global One the full value of the labor and services from which NCH benefited.

150. Under these circumstances, it would be inequitable and unjust to permit NCH to retain the benefits conferred by Global One without paying for them.

151. The value of the uncompensated benefits conferred upon and retained by NCH is presently calculated at $138,396.50.

WHEREFORE, Plaintiff, GLOBAL ONE BUILDERS LLC, demands judgment against Defendant on Count VI for restitution and the value of the benefits unjustly retained, in an amount to be determined at trial, together with prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT VII**
**PROMISSORY ESTOPPEL**
**(PLEADED IN THE ALTERNATIVE)**

152. Plaintiff re-alleges and incorporates Paragraphs 1 through 86 as if fully set forth herein.

153. This Count is pleaded in the alternative pursuant to Federal Rule of Civil Procedure 8(d), to the extent the Court determines that no enforceable contract governed some or all of the labor and services furnished by Global One to NCH.

154. During the parties' course of dealing, NCH repeatedly represented and promised to Global One that Global One would be paid for the labor and services it was furnishing to NCH's Projects.

155. As outstanding balances accumulated, NCH repeatedly represented that its inability to make payment was attributable to the timing of payments NCH expected to receive from parties upstream on the Projects and that payment to Global One would follow as those funds became available.

156. NCH made those representations while continuing to request, coordinate, accept, and benefit from additional labor furnished by Global One.

157. Under the circumstances, NCH reasonably should have expected its promises and representations concerning payment to induce Global One to continue furnishing labor and advancing the substantial weekly payroll necessary to maintain workers on NCH's Projects.

158. Global One reasonably relied upon NCH's promises and representations by continuing to mobilize workers, furnish labor, and advance weekly payroll and related expenses rather than ceasing performance when NCH failed to timely pay the outstanding invoices.

159. Global One's reliance was definite and substantial, as Global One incurred substantial payroll obligations and furnished additional uncompensated labor for NCH's benefit.

160. NCH accepted and retained the benefit of the additional labor furnished as a result of Global One's reliance but ultimately failed to make the promised payments.

161. Global One has suffered substantial financial loss as a direct result of its reliance upon NCH's promises, including the value of labor furnished and payroll advanced for which Global One has not been compensated.

162. To the extent no enforceable contract governs such labor and services, injustice can be avoided only by enforcing NCH's promises to compensate Global One for the labor furnished in reliance thereon.

WHEREFORE, Plaintiff, GLOBAL ONE BUILDERS LLC, demands judgment against Defendant for all damages recoverable as a result of its detrimental reliance upon NCH's promises, prejudgment interest to the extent permitted by law, taxable costs, and such other relief as the Court deems just and proper.

**DEMAND FOR TRIAL JURY**

Plaintiff demands jury trial on all justiciable issues triable by jury

DATED: October 23, 2026.

BOARDMAN & CLARK, LLP

/s/ *Taylor R. Anderson*__________
Taylor R. Anderson, SBN 1134728
P.O. Box 927
Madison, Wisconsin 53701-0927
(608) 257-9521
tanderson@boardmanclark.com

XANDER LAW GROUP, P.A.
JOSE J. TEURBE-TOLON, ESQ.
Fla. Bar No. 87791 *(pending pro hac vice)*
25 S.E. 2nd Avenue, Suite 808
Miami, Florida 33131
Telephone: (305) 767-2001
jose@xanderlaw.com
service@xanderlaw.com
*Counsel for Plaintiff*